O’Neall, J.
It was contended that hire ought to be allowed from the death of Elizabeth Talbird, and not from the time of demand and refusal, as the former period was that at which an actual conversion took place. I have no doubt that the plaintiff is entitled to hire, by way of damages, from the death of Mrs. Talbird; for it seems that John Talbird, the husband of Elizabeth, deceased, sold to the defendant the slaves in dispute — he had the right to do so for the life of the said Elizabeth. At the time of her death, the plaintiffs and her co-tenant’s right in remainder to have the possession of the property, commenced. If the defendant used and employed the slaves from that time, he has had the benefit of their labor, and ought to pay the plaintiff her share of the hire; but it is not only that he ought to do it, it is a positive rule of law, that in this action the plaintiff is entitled to recover, not only the value of the property, but also hire from the time of the conversion. What is a conversion! It is any assertion of right to, accompanied by possession of the property of another. He who uses the property of another as his own, without the owner’s consent, has converted it to his own use, and is liable to this action. In Read v. Colcock, 1 N. & M’C, 600, the rule was stated by Mr. Justice Johnson. Speaking of the action of trover, he said, “ although the conversion may be said to be the gist of the action, and therefore must necessarily be proved, yet when, from all the circumstances, it is evident that the question of right is the true question in dispute, it forms rather an unimportant feature in the case, and it will be seen by reference to the authorities that every person assuming to dispose of the property of another, or the least intermeddling with it, in a manner subversive of the dominion which the owner has over it, it is - sufficient evidence of a conversion.” The defendant, from the facts found by the special verdict, may legally be presumed to have converted the slaves to his use at the death of Elizabeth Talbird. It finds that the defendant has had possession of the slaves from the time he *599 bought from John Talbird. This shows that he held them as his own, and would be enough to constitute a conversion so soon as the life estate fell in , but a demand and refusal has been also proved, and this is evidence not only of a conversion then, but it authorises a jury to presume conversion from the time the plaintiff’s right to possession commenced. Indeed, I have no doubt that, as Mr. Starkie, in his treatise on evidence, 1492, says, “ If, indeed, the defendant having possession of the plaintiff’s goods, refuse to give them up, and there be no evidence to justify the refusal, or to explain it, then the presumption of conversion, is a presumption of law upon which the jury ought to find a conversion.” There is another circumstance which, although it does not appear from this special verdict, yet it appears from the former opinion in this case then brought up under the name of Henry v. Means, is decisive of the fact of conversion at the death of Elizabith Talbird. The defendant pleaded the statute of limitations, and it was allowed against two of the plaintiffs, who had been of full age for more than four years before action brought. Unless there had been a conversion commencing as soon as they attained full age, (and one was, I think, of full age at the death of Elizabeth Talbird,') the plea of the statute could not have been allowed. For until there was a conversion, there could be no cause of action given or accrued, and until then, the statute, according to its own words, could not commence to run. From these views, I entertain no doubt that, at the death of Elizabeth Talbird, the defendant converted the property to his own use, and from that time, that he is liable for the plaintiff’s share of the hire of the said slaves, by way of damages.
But we cannot give judgement according to this legal con-' elusion on the special verdict. The time of the death of Elizabeth Talberd is not found, and, for aught we know, it may have taken place after action brought, and although it is probable that it is not so, yet we cannot presume any thing on a special verdict! On account of the defect, a venire facias de novo must be awarded. We think this must be awarded generally, for we do not think that we ought (if we had the power, which we very'much doubt,) to restrict the trial, which must take place under it, to the defect in the special verdict. The award of a venire facias de novo on a special verdict, is a new trial, and the whole case, so far as the facts are concerned, must be gone over again, if the parties desire it.
The motion to set aside the decision of the judge below, on the special verdict, and to award a venire facias de novo, is granted.
Johnson and Harper, Js. concurred.